IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BRIGIDA CHOCK,<br>aka "Aida Chock"<br><br><br>　　　　　Defendant. | CR. NO. 21-00069 JMS-02<br><br>ORDER DENYING DEFENDANT BRIGIDA CHOCK'S MOTION TO WITHDRAW GUILTY PLEA, ECF NO. 132 |

## ORDER DENYING DEFENDANT BRIGIDA CHOCK'S MOTION TO WITHDRAW GUILTY PLEA, ECF NO. 132

### I. INTRODUCTION

Pro se Defendant Brigida Chock ("Defendant") has filed a motion seeking to withdraw from her guilty plea. ECF No. 132 ("Motion to Withdraw").[1] For the reasons that follow, the Motion to Withdraw is

---

[1] The Motion to Withdraw was filed pro se, on behalf of both Defendant and Michael Chock, Defendant's husband and co-defendant. But because Michael Chock is represented by counsel, the court struck the Motion to Withdraw as to Michael Chock, and thus considers it as to Defendant only. *See* ECF No. 133. The United States filed a Response to the Motion to Withdraw on November 14, 2025. ECF No. 136. Defendant then filed an "Emergency Motion to Withdraw Guilty Plea and Dismiss Indictment with Prejudice," ECF No. 143 ("Emergency Motion"), on November 24, 2025 (one day before the scheduled hearing on the Motion to Withdraw). Given Defendant's pro se status, the court considers the "Emergency Motion" as a supplement to her Moton to Withdraw. A hearing was held on November 25, 2025.

DENIED.

## II. **BACKGROUND**

On June 10, 2021, Defendant was charged in a First Superseding Indictment ("FSI") with two counts: (1) Count 1—conspiracy to defraud the United States in violation of 18 U.S.C. § 371; and (2) Count 2—making and subscribing to a false tax return in violation of 26 U.S.C. § 7206(1).  ECF No. 35.  On March 16, 2023, Defendant entered a plea of guilty to Count 1 before Magistrate Judge Wes Reber Porter pursuant to a memorandum of plea agreement.  ECF Nos. 61–64.   This court accepted Defendant's plea of guilty on April 3, 2023.  ECF No. 70.

The Motion to Withdraw was filed in addition to several other pro se filings.  To put the Motion to Withdraw into proper context, the court first describes these other pro se filings.

On August 18, 2025, while pending sentencing, Defendant and Michael Chock filed an "Emergency Motion to Stay."  ECF No. 90.  That Motion was frivolous and without any basis in law, including claims that this court "may not move forward with this case without first establishing jurisdiction recorded on record and explained in detail to defendant," and that the plea of guilty is invalid without grand jury minutes and an "unredacted grand jury indictment."  *Id*. at PageID. 295–296.  Based on the claim that the court lacks jurisdiction over her

2

criminal case, Defendant sought a stay of the case pending appeal to the Ninth Circuit and, if necessary, the Supreme Court. *Id*. at PageID.303. On August 18, 2025, the court denied the Emergency Motion to Stay and explained the basis of the court's jurisdiction:

> On August 18, 2025, Defendants, proceeding pro se, filed an "Emergency Motion to Stay," ECF No. 90. The Motion argues that this court lacks jurisdiction over the case. *See id.* at PageID.295 ("In sum, [the court] may not move forward with this case without first establishing jurisdiction. . . ."). The Motion is DENIED. *See, e.g.*, 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."); *United States v. Studley*, 783 F.2d 934, 937 (9th Cir. 1986) ("These offenses include crimes defined in Title 26 of United States Code.").

ECF No. 91.[2] Next, on August 29, 2025, Defendant and Michael Chock filed a pro se "Motion of Conflict of Interest," ECF Nos. 92 and 94. That motion claims, in part, that Defendant's Criminal Justice Act ("CJA") attorney provided ineffective assistance of counsel. For example, the motion states that "[c]ounsel knew that the crime they advised the clients to plead guilty to, was not an actual crime" and "[c]ounsel advised their clients to commit perjury." ECF No. 94 at PageID.344. As another example, the motion claims that under "the Criminal Justice Act, the court appointed attorneys work within the same department as the Assistant U.S.

---

[2] On September 26, 2025, the Ninth Circuit denied Defendant's writ of mandamus and appeal of the court's August 18, 2025 Order. ECF Nos. 95, 117.

Attorneys, but, just different office, and this fact, creates a conflict of interest." *Id*. at PageID.345–346.

Based on the filing of the Motion of Conflict of Interest, the court held a status conference on September 8, 2025. On that day, before the status conference was held, Defendant filed an "Affidavit Addendum of Brigida E. Chock," claiming that she was the "victim[] of fraud in the factum, as [she was] misled into signing a plea guilty agreement for the Government's own gain . . . ." and that Defendant was not guilty of any crime, but instead was a victim. ECF No. 102 at PageID.446. She also claimed that this court "lacks authority to proceed due to a violation of due process;" that "[w]ithout compliance with its own laws—including an unredacted grand jury indictment as required under Rule 7—the plea is invalid;" and that "**THIS CASE CANNOT PROCEED** until jurisdiction is proved to exist!" *Id*. at PageID.449 (some emphases omitted).

At that status conference, Defendant stated that she wanted to terminate her CJA counsel and to proceed pro se. The court then set a *Faretta* hearing,[3] which was ultimately scheduled for September 23, 2025. *See* ECF Nos. 103, 104, and 107. Before that date, Defendant filed an "Affidavit of Harm by

---

[3] Under *Faretta v. California*, 422 U.S. 806 (1975), a defendant may proceed without legal representation if, after inquiry, the court determines she elects—voluntarily and intelligently—to do so.

Brigida E. Chock," again challenging the court's jurisdiction. ECF No. 109. The court struck that filing because, at the time it was filed, she was represented by counsel. ECF No. 110.[4]

After a full *Faretta* inquiry, the court determined that Defendant unequivocally decided to represent herself, and that her waiver of the right to counsel was knowing, intelligent, and voluntary. ECF No. 114. And given that Defendant was permitted to proceed pro se as of September 23, the court struck the Motion to Recuse as to Michael Chock (who, again, is presently represented by counsel) but not as to Defendant.

Defendant also filed a motion seeking this court's recusal from her criminal case pursuant to 28 U.S.C. § 455. ECF No. 111. That Motion was denied by order dated September 30, 2025. ECF No. 122. And on October 10, 20205, Defendant filed a Motion titled, "Fraud on the Court by the Court and Officers of the Court with Brigida's Declaration and Evidence Attached." ECF No. 125. That Motion was denied on December 2, 2025, ECF No. 149.

### III.  DISCUSSION

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a

---

[4] Local Rule 83.5, which applies to criminal cases through Local Rule 1.3, states that "[t]he court may strike any document filed by a party on his or her own behalf when the party is represented by counsel in the action."

defendant may withdraw from a plea of guilty before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Although the burden is on the defendant to demonstrate a fair and just reason to withdraw from the plea, this standard is to be applied liberally. *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004.

> Even though Rule 11(d)(2)(B) is applied liberally,
>
> a defendant must first offer in good faith a "new" basis for seeking to withdraw his plea, meaning that he subjectively did not know this "new" reason for withdrawal at the time of his plea. This "new" reason thus cannot be a pretextual excuse to renege on a plea deal and must be offered in good faith. He then must show that objectively he could not have known or anticipated this "new" material reason, either. Only then can the district court exercise its discretion to allow a plea withdrawal under Rule 11's "fair and just" standard.

*United States v. Hernandez*, 105 F.4th 1234, 1239 (9th Cir. 2024). Thus, a defendant "may not withdraw his plea without offering a good-faith 'new' reason for doing so: he must show that he genuinely did not know of this 'new' reason to withdraw his plea at the time of his plea deal, and that this new reason is not a pretextual excuse." *Id*. A "change of heart—even a 'good faith change of heart'—

6

is not a fair and just reason that entitles [a defendant] to withdraw [a guilty] plea . . . ." *United States v. Ensminger*, 567 F.3d 587, 593 (9th Cir. 2009); *see also Hernandez*, 105 F.4th at 1239 (stating that a defendant cannot attempt to undo a plea based on buyer's remorse); *United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987). Thus, on one hand, a district court does not abuse its discretion by denying a motion to withdraw a plea based on unsupported claims of innocence. *United States v. Turner*, 898 F.2d 705, 713 (9th Cir. 1990); *see also United States v. Chatterjee*, 696 F. App'x 217, 219 (9th Cir. 2017). On the other hand, a claim of innocence, supported by evidence not available at the time of the entry of the plea, might be a fair and just reason for allowing withdrawal of a guilty plea. *See United States v. Nagra*, 147 F.3d 875, 880 (9th Cir. 1998). Further, "[s]tatements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea." *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008).

Here, the Motion to Withdraw raises a number of arguments, many unrelated. These include claims that:[5]

- Defendant's attorney "never explained the indictment to [her] in detail, as to provide a definitive meaning as to each charge and count." ECF No. 132 at PageID.1324.

- At her initial arraignment, the trial date was set on July 13,

---

[5] Throughout her Motion to Withdraw, Defendant mistakenly refers to the undersigned as the "Chief" Judge of the United States District Court for the District of Hawaii.

    2021 "to place fear and duress of sentencing and deportation." *Id*.

- During her change of plea hearing, "[w]hen asked if she promised anything in exchange for entering her plea she was advised by her counsel to COMMIT PERJURY and say 'NO.' When in fact, her attorney and the [prosecutor] both knew and advised her that 'they would only seek one count as to one charge' and 'would exclude all other offenses in exchange for her testifying' [as a cooperating witness]." *Id.* at PageID.1325; *see also id.* at PageID.1327–1328.

- Defendant "agreed to testify and entered the plea agreement under duress and fear of not receiving a fair and impartial hearing, trial, or sentencing." *Id.* at PageID.1325.

- Defendant discovered that the FSI was not signed by the grand jury foreperson and there was "NO GRAND JURY WARRANT." *Id.* at PageID.1326, 1331.

- Defendant never signed the plea agreement. *Id.* at PageID.1329.

- Defendant was a victim of the crime to which she pled guilty—that is, "the evidence and facts in the case under the BEST EVIDENCE RULE and CLEAR and CONVICING EVIDENCE constitute that [she is a] VICTIM[] OF TAX FRAUD SCHEME and not CULPRITS OR COSPIRATORS to the CRIMINAL ACTS, as told to them and tricked to believe by misadvised of Defense Counsel[]" and the prosecutors. *Id.* at PageID.1326.

- Defense counsel and the court conspired "to BRIBE VICTIM, Brigida Chock, to COMMIT PERJURY . . . while taking the stand against the person who committed the crime against the VICTIMS." *Id.* at PageId.1327.

- The court failed to report the commission of various felonies, including bribery to commit perjury and the court's orders are "VOID AB INITIO," because the court practiced law from the

8

        bench.  *Id*. at PageID.1328–1329.

- The court, defense counsel, and the prosecutors "ALL have a personal interest in the outcome of the case." *Id*. at PageID.1330.

- The prosecutors "may not consent to the plea known as an Alford plea (see *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970))." *Id*. at PageId.1339.

- Defendant would not have entered a plea of guilty had she been aware that the court lacked jurisdiction and that she is a victim, not a perpetrator of the crime. *Id*. at PageID.1340.

In her November 24, 2025 Emergency Motion, Defendant adds the following arguments:

- "**Threats**: Government agents and/or conflicted counsel informed Defendants that if they did not plead guilty, a jail term for both Brigida and Michael, and for Brigida, a jail term of 1-5 years, then after serving time in jail, she will be deported to the Philippines." ECF No. 143 at PageID.1646.

- "Defendants were misled regarding the nature of the documents they signed and the rights they were waiving," and the plea was under duress, rendering it "involuntary." *Id*. at PageID.1647.

- When interviewed by the prosecutors in the summer of 2025 about Defendant's potential testimony in another case, she was told to say "no" if asked whether she "was given a promise for a deal." *Id*.

- The government failed to disclose *Brady* material, including that there is "NO jurisdiction, NO Grand Jury warrants, No Grand Jury indictment, NO Grand Jury Minutes, and NO seal and signature by the Grand Jury Foreperson and NO seal and signature by the Clerk of Court." *Id*.

        Many of Defendant's claims are easily shown to be false.  For

example, Defendant claims that the foreperson never signed the FSI and that she never signed the plea agreement. Not true. *See* ECF No. 36 (sealed version of the FSI containing the signature of the grand jury foreperson);[6] ECF No. 63 (Defendant's memorandum of plea agreement, containing her signature); ECF No. 106 (transcript of plea colloquy in which Defendant confirms that she signed the plea agreement).[7] Further, as Defendant has previously been informed, this court has jurisdiction over her case and her prosecution.

Defendant also claims that during her change of plea hearing, her counsel told her to commit perjury by telling the court that nothing was offered in exchange for her plea, when in fact it was agreed that the government would "only seek one count as to one charge" and "would exclude all other offenses in exchange for her testifying" as a cooperating witness. ECF No. 132 at PageId.1325; *see also id.* at PageID.1327–1328. This claim, based on a review of the plea hearing transcript, is incorrect. During the change of plea hearing, the

---

[6] As a matter of course, in the District of Hawaii the docket in criminal cases contains: (1) a publicly available indictment that has the signature of the foreperson redacted; and (2) a sealed indictment that contains the signature of the foreperson. This practice permits the identity of grand jurors to remain confidential. *See In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 782 (9th Cir. 1982); *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500 (D.C. Cir. 1998).

[7] Defendant also claims that there was no "GRAND JURY WARRANT," presumably claiming that she was improperly arrested without the prior issuance of a warrant. Again, Defendant is incorrect. *See* ECF No. 5 (May 13, 2001 arrest warrant for Defendant after the return of the original indictment). Although she further alleges that there are also no grand jury minutes or seal and signature from the clerk of court, she fails to explain how these items are required, or how they relate to her Motion to Withdraw.

10

court asked Defendant whether the plea agreement "represents the entire agreement between you and the government. Everything that is part of that agreement is reflected in this document?" Defendant answered, "Yes, Your Honor." ECF No. 106 at PageID.494. And the plea agreement contains that very promise that Defendant now alleges that defense counsel told her to lie about. That is, the plea agreement sets forth that Defendant would plead guilty to Count 1 in exchange for the dismissal of Count 2, that the government agreed not to file additional charges for conduct related to the charges in the FSI, and that Defendant agreed to cooperate with the United States, including testifying at a trial. ECF No. 63 at PageID.159–160, 178. In other words, Defendant's suggestion that counsel told her to hide terms of the agreement from the court could not be true—those very terms were set forth in the plea agreement itself.

Defendant also makes claims that are both fanciful and nonsensical. For example, she states that the court, defense counsel and the prosecutors all have a personal interest in the outcome of her case and have bribed her to commit perjury. Then, she claims, the court failed to report the commission of these felonies, leaving the court's prior orders "VOID AB INITIO." These allegations are not supported by any evidence, but instead are stated in a conclusory fashion and appear to stem from Defendant's general displeasure with the entire criminal

11

justice system.[8]

Other claims demonstrate a lack of understanding of court process. For example, Defendant alleges that at her May 18, 2021 initial appearance, a trial date was set on July 13, 2021 "to place fear and duress of sentencing and deportation." ECF No. 132 at PageID.1324. As is true in all arraignments in the District of Hawaii, the trial date is set based on the Speedy Trial Act parameters, not to place a defendant in "fear and duress." And regardless, Defendant's trial was continued several times and she did not enter a plea of guilty until March 16, 2023, some 22 months after her arraignment. She also alleges that either the government agents or her counsel told her that if she did not enter a plea of guilty, she could face a sentence of 1–5 years and be deported after serving her sentence. This, she claims, was a threat that coerced her to plead guilty. In fact, based on the court's review of Guideline § 2T1.1, the "threat" was a fair assessment of the consequences of being found guilty at a trial. If convicted by a jury, Defendant could be facing an offense level 18.[9] With a criminal history category I, Defendant

---

[8] These allegations may be related to Defendant's claim, discussed later, that she was a victim of the tax fraud conspiracy, not a member of it. Regardless, the allegations are not based in fact.

[9] Under Guideline § 2T1.1, Defendant would have a based offense level 16 (based on a tax loss of between $100,000 and $250,000) and a 2-level upward adjustment for an offense involving sophisticated means. To be clear, the court is not making a Guideline determination at this point in time; instead, the court is making a fair approximation based on the facts presently known to the court. *See also* ECF No. 74 (draft presentence report).

would have a Guideline advisory range of 27–33 months.  And, as the plea agreement points out, because Defendant is not a citizen of the United States, a conviction "makes it highly likely that the defendant will be removed or deported from the United States."  ECF No. 63 at PageID.161.  Thus, what Defendant claims was a "threat" that coerced her to enter a plea was in fact, from the court's view, a fair assessment of the period of incarceration that she was facing if convicted at trial.  And finally, Defendant's claim that the prosecutors could not consent to an *Alford* plea is irrelevant—Defendant did not enter an *Alford* plea.  *See* ECF No. 63 (memorandum of plea agreement).

        Defendant also makes claims that are inconsistent with her statements under oath when entering her plea of guilty.  "Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."  *Ross*, 511 F.3d at 1236.  First, she claims that her attorney "never explained the indictment to [her] in detail, as to provide a definitive meaning as to each charge and count."  ECF No. 132 at PageID.1324.  This suggests, of course, that she entered a plea of guilty without having an understanding of the charges against her.  But while under oath, Defendant confirmed that she was satisfied with her counsel and his advice, that she had the opportunity to discuss the FSI with him, and that she understood Counts 1 and 2 against her, including the elements of each count.  ECF No. 106 at PageID.483–

13

487.

Next, Defendant claims that she was misled "regarding the nature of the documents [she] signed," ECF No. 143 at PageID.1647, and that her plea was under duress and thus involuntary. In fact, during her change of plea Defendant—again, under oath—confirmed that she read the plea agreement and discussed it with counsel before signing it. ECF No. 106 at PageID.492. She also confirmed that nobody made any threats or promises to her (other than the terms of the plea agreement) in relation to pleading guilty. *Id*. at PageID.495. Other than Defendant's conclusory statements to the contrary, there is simply no evidence that Defendant was threatened or coerced to enter a plea of guilty, or that she did so involuntarily.[10] In fact, Defendant's under-oath statements show otherwise.[11]

Last, Defendant claims prosecutorial misconduct—when interviewed in the summer of 2025 about her potential cooperating witness testimony in a related criminal tax case, prosecutors allegedly told her to say "no" if asked whether she "was given a promise for a deal." ECF No. 143 at PageID.1647. First, Defendant never explains the "deal" that she was given. Presumably, the

---

[10] During the November 25, 2025 hearing, Defendant was given the opportunity to present any additional evidence in support of her Motion to Withdraw, but declined to do so.

[11] Although certainly not dispositive to her Motion to Withdraw, a review of the change of plea transcript amply demonstrates that Defendant's plea was voluntary, knowing, and intelligent.

"deal" is her agreement to cooperate and how her cooperation could potentially lower her sentence. But these terms are clearly set forth in her plea agreement and publicly available for anyone to see. ECF No. 63. Further, the cooperation language in the plea agreement does not contain any "promise" for a specific deal. Instead, Defendant agreed to cooperate with the government, and in return the government, in its discretion, may file a motion for downward departure at sentencing. *Id*. at PageID.180. These under-oath statements fatally undermine Defendant's conclusory claims to the contrary. In short, Defendant has not established any prosecutorial misconduct.

        The court now turns to what appears to be Defendant's primary argument—that "the evidence and facts in the case under the BEST EVIDENCE RULE and CLEAR and CONVICING EVIDENCE constitute that [she is a] VICTIM[] OF TAX FRAUD SCHEME and not CULPRITS OR COSPIRATORS to the CRIMINAL ACTS, as told to them and tricked to believe by misadvised of Defense Counsel[]" and the prosecutors. ECF No. 132 at PageID.1326. Liberally construed, Defendant argues that she is factually innocent of the offense to which she pled guilty, and that her counsel and the prosecutor "tricked" her to believe otherwise. This claim too lacks merit.

        Defendant entered a plea of guilty to conspiracy to defraud the United States in violation of 18 U.S.C. § 371. The elements of this offense are

15

"(1) [defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *United States v. Rodman*, 776 F.3d 638, 642 (9th Cir. 2015) (quoting *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993)).  The statute covers "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *Tanner v. United States*, 483 U.S. 107, 128 (1987) (internal quotation marks omitted).  Here, Defendant was charged with a conspiracy involving the "filing with the IRS federal income tax returns claiming fraudulent refunds . . . and engaging in a course of conduct to prevent the IRS from recouping the fraudulently obtained tax refunds."  ECF No. 35 at PageID.98.

In the plea agreement, Defendant stipulated to certain facts as accurate, including that in exchange for a fee, co-conspirator-1 prepared false and fraudulent returns for her and Michael Chock, those returns fraudulently asserted a claim for a refund in the amount of $225,327, and that Defendant and Michael Chock obtained a fraudulent refund check from the IRS.  ECF No. 63 at PageID.165–167.  Then, after obtaining the fraudulent refund check, Defendant and Michael Chock "mailed a letter containing false, fraudulent, and frivolous statements to an IRS employee, in which they falsely represented that they prepared their joint Amended U.S. Individual Income Tax Return, Form 1040X,

16

for calendar year 2014 themselves and falsely represented their relationship with Gimmel Group, LLC." *Id*. at PageIdD.167–168.  Next, for a period of several months, Defendant and Michael Chock "mailed false, fraudulent, and frivolous letters to the IRS in response to IRS efforts to recover the fraudulently obtained tax refund.  The purpose of the letters was to stop IRS collection efforts." *Id*. at PageID.168.

During her change of plea hearing Defendant claimed that she was unaware of the illegality of the scheme when she initially sought the tax refund, but that she then became aware of its illegality and thereafter engaged in conduct with others to prevent the IRS from recouping the fraudulently obtained tax refund.  *See* ECF No. 106 at PageID.501–505.  Specifically, in response to questions from the court, Defendant admitted under oath that she and Michael Chock wrote letters to the IRS "essentially frustrating [the IRS] efforts to collect" the refund, and at the time she wrote those letters she knew that the filing of the return had been false or fraudulent.  *Id*. at PageID.502, 504.  In other words, in her written plea agreement and while under oath in court, Defendant admitted that she conspired with others by "engaging in a course of conduct to prevent the IRS from recouping the fraudulently obtained tax refunds."  *See* ECF No. 63 at PageID.166.  That is, Defendant admitted that she entered into a § 371 conspiracy "for the purpose of impairing, obstructing or defeating the lawful function of any department of

17

Government." *Tanner*, 483 U.S. at 128.[12] Her under-oath statements admitting each essential element of a § 371 violation carries a strong presumption of veracity and undermine her claim that she was a victim of the tax fraud, not a co-conspirator.

Regardless of her admissions under oath, Defendant now claims innocence. And although a claim of innocence, supported by evidence not available at the time of the entry of the plea, might be a fair and just reason for allowing withdrawal of a guilty plea, *see Nagra*, 147 F.3d at 880, Defendant is not claiming that she has discovered any *new* evidence, whether withheld by the government or otherwise. Instead, she has made an unsupported claim of innocence, which is contradicted by her under-oath statements made in court. She has failed to establish a fair and just reason to withdraw from her plea. *See Turner*, 898 F.2d at 713 (finding that the district court did not abuse its discretion by denying a motion to withdraw a guilty plea based on an "unsupported protest" of innocence); *Chatterjee*, 696 F. App'x at 219 (stating that the district court was justified in rejecting the defendant's claim of innocence as a basis to withdraw from a plea where the defendant admitted facts establishing guilt in a plea

---

[12] During the November 25, 2025 hearing, Defendant suggested that her and Michael Chock never received the IRS refund check. But during her under-oath change of plea hearing, in response to questions from the court, Defendant stated that with the help of co-conspirator 1, "we filed a claim to IRS and received funds which we were not entitled to." ECF No. 106 at PageID.501. She further admitted that the IRS sought to recoup the refund money, and that she communicated with the IRS about the refund money. *Id*. at PageID.504.

agreement and during a guilty plea hearing); *United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012) ("Statements of guilt under oath at a plea hearing support the district judge's decision not to permit withdrawal."); *United States v. Isom*, 580 F.3d 43, 53 (1st Cir. 2009) (finding that the defendant's "claim of innocence flies in the face of several admissions to the contrary"); *United States v. Carroll*, 412 F.3d 787, 792 (7th Cir. 2005) (stating that a defendant's "bare protestations of innocence" after a knowing and voluntary guilty plea, are insufficient to permit the withdrawal of a guilty plea).

The lack of any new evidence is fatal to Defendant's Motion to Withdraw. Under Rule 11(d)(2)(B), a defendant must offer in good faith a "new" basis for seeking to withdraw from her plea that she did not subjectively know at the time of the plea. And a defendant must also show that she could not have objectively known or anticipated this "new reason" at the time of the plea. *Hernandez*, 105 F.4th at 1239. Here, Defendant fails to offer any "new" reason, and certainly not one that she could not have objectively known or anticipated when she entered her plea. Instead, as explained above, her claims in support of her Motion to Withdraw are factually incorrect, conclusory, fanciful, or not supported by the actual record in the case.

Instead of offering a valid basis to withdraw from her plea, it is clear to the court that Defendant has had a change of heart. Her multiple frivolous

19

filings with the court, including her claim that the court lacks jurisdiction over her, are strongly suggestive that her present claim of innocence is nothing but a "pretextual excuse to renege" on her plea of guilty. *Id*. This change of heart is not a fair and just reason to withdraw from a plea of guilty. *Ensminger*, 567 F.3d at 593.

## IV.  <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion to Withdraw, ECF No. 132, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 2, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge